UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DOMINICK CRUZ,

                             Petitioner,

                                                        Case No. 22-CV-06046-FPG

v.

WARDEN MS./MRS. WALCOTT,                           DECISION AND ORDER

                                Respondent.

## INTRODUCTION

On January 31, 2022, Dominick Cruz ("Petitioner"), proceeding *pro se*, filed a habeas petition under 28 U.S.C. § 2254 challenging his state-court convictions for murder in the second degree, attempted murder in the second degree, assault in the first degree, and criminal possession of a weapon in the second degree.  ECF No. 1.  On October 19, 2022, Warden Ms./Mrs. Walcott ("Respondent") responded to the petition.  ECF Nos. 18-19.  Petitioner did not reply.  For the reasons below, Petitioner's request for habeas relief is DENIED, and the petition is DISMISSED.

## BACKGROUND

On March 2, 2016, a Niagara County grand jury indicted Petitioner for one count of murder in the second degree against Mark Sternin (Penal Law § 125.25(1)), attempted murder in the second degree against Tyler Sadauskas (Penal Law §§ 110, 125.25(1)), assault in the first degree against Sadauskas (Penal Law § 120.10(1)), and criminal possession in the second degree (Penal Law § 265.03(3)).  SR. at 61-62.[1]  From October 3, 2016 until October 13, 2016, Plaintiff was tried by a jury before the Honorable Sara Sheldon in Niagara County Court.  Tr. 18-1 at 6.

---

[1] The Court uses the "SR." page numbers in the attached state court record.  *See* ECF No. 18-2.  The trial record is indicated by "T." and the page number.  *See* ECF No. 19.

### A.  The Prosecution

The charges stemmed from an altercation between Petitioner, Sadauskas, Sternin, and Joshua Foeller which occurred in Tonawanda on Friday, January 9, 2016.  That night, Sadauskas and his friends, Sternin and Foeller, celebrated Sadauskas's birthday by socializing at Sternin's house and visiting several bars in Tonawanda, consuming alcohol and cocaine at each location.  T. at 1015-16, 1075-77, 1016-18, 1078, 1018-26.  They were not armed.  T. at 1040, 1096.

Petitioner and his friend Amanda Elbing went out on the same night to a nearby casino, where they consumed alcohol.  T. at 887-93.  Later, they drove to Buffalo and made two stops on the way, picking up two friends of Petitioner, who were identified at trial as "Red Shirt" and "White Shirt."  T. at 893-07.  Petitioner made another stop after, leaving Elbing and his two friends in the car.  T. 909-10.  When Petitioner returned to the car, he asked Elbing to hold a handgun while he drove.  T. at 911.  After driving for a short time, Petitioner stopped, took the handgun back, and placed it under the hood of the car.  T. at 911.

Later that night, around 1:00 a.m. on January 10, Sadauskas, Foeller, and Sternin left a bar and walked to Foeller's car, which was parked in a lot next to a bar called "Crazy Jake's" in Tonawanda.  T. 1024-27, 1085.  At around the same time, Petitioner drove into the same parking lot with his companions.  T. at 913.  Petitioner parked near Sadauskas's car, where Sadauskas and his friends had gathered.  T. 914.  Petitioner asked them, "Do you have a fucking problem?"  T. 914-15.  Petitioner, Red Shirt, and White Shirt exited their car, and told Elbing to get into the driver's seat and stay in the car.  T. at 915-16.  Sadauskas noticed a group of men approaching from both the front and rear of Foeller's car, and shortly thereafter Foeller was tackled from behind. T. at 1028, 1085-87.  The six men fought and wrestled, but neither Sadauskas, Foeller, nor Elbing saw who threw the first punch.  T. at 916, 1028, 1087.  Sternin fought two individuals.  T. at 916-

2

17, 1087.  No weapons were drawn up to this point.  A bystander, Kathryn Schultz, was talking on her phone in the same parking lot and witnessed two separate fights—one of them one-on-one, the other two-on-one—and did not see any weapons drawn.  T. at 773-74, 797.

Shortly thereafter, Elbing exited Petitioner's car and heard someone state, "Pop it."  T. at 917.  Elbing heard that said again, and saw Petitioner walking to the driver's side of his car.  T. at 917-18.  Elbing and Schultz then observed that the fighting had stopped.  T. at 774, 920.  Petitioner approached the driver side door, and Schultz saw the hood open on a car which matched the description of Petitioner's car.  T. at 774.  Sadauskas heard someone say, "What are you going to do, motherfucker?" or something similar.  T. at 1031-32.

Sadauskas, Foeller, Schultz, and Elbing each heard two gunshots.  T. at 775, 920, 1034, 1088.  Sadauskas noticed that he was bleeding from his abdomen.  T. at 1034.  He called to Foeller, who was fighting an individual near the back of the car, and stated that an ambulance was needed.  *Id*.  The person who was fighting Foeller fled, and Elbing saw Petitioner drive off in his car.  T. at 921, 1089.  Schultz went closer to the scene and saw Sternin on the ground, gurgling and covered in blood.  T. at 777.  After the police arrived, Sternin was lying on the ground approximately twenty feet from Foeller's car.  T. at 714-15.

Sadauskas and Sternin were both shot.  Sadauskas was shot in the abdomen, and the exit wound indicated that Sternin was lying on the ground when he was shot.  T. at 1286-90.  Sadauskas's injuries were near fatal and required surgery.  T. at 1271-76.  Sternin was shot through his left lung, a majority artery and vein, and his spine, and was pronounced dead at the scene.  T. at 1292.

When police attempted to question Foeller at the scene, he was very upset and used "vulgar language."  T. at 1102.  Items belonging to Petitioner were found about three feet from Sternin's

body, including a cigar which bore Petitioner's DNA.  T. at 811-13, 924-27.  Bullet holes were

found in the windows of another car in the parking lot, and the source of the bullets was determined

to be the area where Sternin's body was found.  T. at 1415-18.  Two 9-millimeter casings were

found near Sternin's body, and Sadauskas's blood was found on Foeller's car and Petitioner's

sneaker.  T. at 1335-39, 815, 1209-18.  No weapons were found at the scene or in Foeller's car.  T.

at 920-21, 1343-47.

Police located Petitioner at his place of employment, and Petitioner fled when they arrived.

T. at 828.  Petitioner was apprehended three months later in Pennsylvania.  T. at 1183-90.

At trial, Foeller testified.  Defense counsel cross-examined him regarding his conduct

before and after the shooting, including his alleged lack of cooperation with police immediately

after the shooting occurred, and a statement he had made to the police that he was approached by

three black men and wrestled with one while Sadauskas and Sternin held the others back.  T. at

1100-25.  The prosecution objected to two of defense counsel's questions.  One objection was

overruled, and the other resulted in the court requesting that defense counsel rephrase a question,

after which defense counsel did.  T. at 11010-2, 1116.  Defense counsel concluded questioning

with, "Okay. That's all Judge."  T. at 1126.  No redirect was conducted, and Foeller stepped down.

T. at 1126.

The next day, defense counsel moved for leave to recall Foeller as a witness, indicating

that he intended to ask Foeller about another statement he had made to police at the scene of the

shooting.  T. at 1351.  The court reserved judgment until the next day, and defense counsel then

stated that he intended to ask Foeller about his alleged statement that "I got my friends killed."  T.

at 1351-52.  The court denied defense counsel's request to recall Foeller, stating that, "The witness

was on the stand, you had an opportunity, ample opportunity to ask those questions.  I don't know

why you didn't." *Id*. Defense counsel responded that he had not questioned Foeller about the statement during cross-examination because he believed the court would allow him to recall Foeller. T. at 1353-54.

### B. The Defense

Captain Thomas Krantz, North Tonawanda Police, testified for the defense that he participated in the investigation of the shooting and attempted to find Red Shirt and White Shirt after. T. at 1469-70. Krantz testified that the two individuals were likely Hector Martinez and Keith Garcia, and that they were eyewitnesses to the shooting, but that neither of them possessed a handgun on the night in question. T. at 1474-76.

Petitioner also testified. Petitioner testified that he saw someone urinating near a car two spaces from where he had parked his car, and that he told the individual to stop because he had a woman in the car with him. T. at 1493-94. Petitioner testified that he heard someone say, "Fuck that bitch," and use a racial epithet, and that he and his friends exited their car to confront Sternin, Foeller, and Sadauskas, whom Petitioner had never met before that night. T. at 1495-96. Petitioner testified that he walked toward Sternin, told him that he was being disrespectful, and that at some point, a fistfight began. T. at 1496-97. Petitioner said that he fell over while fighting Sternin, and Sadauskas fell on them both. T. at 1497-99. Petitioner said he escaped from the fight, and saw Foeller holding a shiny item, and that "White Shirt" said Foeller had a knife. T. at 1499. Petitioner testified that all five other individuals ran away, then returned. Petitioner then retrieved his gun from under the hood of his car, and shot Sternin because Sternin was trying to grab him. T. at 1499-1500. Petitioner said that he shot Sadauskas because Sadauskas ran toward him. T. at 1500.

During cross-examination, Petitioner admitted that he exited his vehicle in the first instance because he was "pissed" at the insulting language that was used. T. at 1530. Petitioner said he

knew that the other party was about to get into their car and leave the parking lot, and that confrontation could have been avoided. *Id*. Petitioner stated that he did not see Sternin or Sadauskas with a weapon that night, and that he fled to Pennsylvania when police tried to apprehend him at work. T. at 1548, 1552, 1558-64. Petitioner admitted that he destroyed his gun. T. at 558-64. After his capture and arrest, Petitioner had multiple recorded telephone conversations with his wife and a female friend regarding the circumstances of the crime and various defenses he was contemplating asserting at trial. T. at 1593.

The jury trial ended with Petitioner's conviction of all charges. T. at 1797-97. On December 2, 2016, Petitioner was sentenced to an aggregate prison term of 65-years to life.

### C.  Direct Appeal

On direct appeal to the Appellate Division, Fourth Department, Petitioner argued that (i) the verdict was against the weight of the evidence, (ii) the jury instructions were erroneous, (iii) the court's refusal to permit him to recall Foeller deprived him of his right to present evidence in his defense, (iv) the prosecutor committed misconduct by improperly cross-examining him and making improper arguments during summation, and (v) his sentence was harsh and excessive. SR. at 3-4.

On August 22, 2019, the Appellate Division affirmed Petitioner's conviction, rejecting each of Petitioner's arguments. SR. at 167-70.

The Appellate Division concluded that (i) the verdict was not against the weight of the evidence with respect to his justification defense because, *inter alia*, the jury could have reasonably determined that the shooting was not justified, (ii) the jury instructions were not erroneous and, in any event, Petitioner's objection to the instructions was unpreserved because defense counsel failed to object at trial, (iii) the trial court did not abuse its discretion in precluding Petitioner from

recalling Foeller as a prosecution witness because he had previously been afforded a full and fair opportunity to cross-examine the witness, (iv) most of Petitioner's objections to the prosecutor's conduct were unpreserved and, even if they were not, no prosecutorial misconduct occurred, and (v) the sentence was not unduly harsh or severe.  SR. at 167-69.

On November 25, 2019, the Court of Appeals denied leave to appeal.  SR. at 174.

### D.  Motion to Vacate

 On June 4, 2022, Petitioner moved to vacate his conviction under CPL § 440.10.  SR. at 178.  Petitioner argued that (i) the prosecutor presented false and misleading testimony from Sadauskas regarding Sadauskas's distance from Sternin when both men were shot by Petitioner, and (ii) defense counsel was ineffective for various reasons.  SR. at 178-96.  Specifically, defense counsel was ineffective because he did not (i) present forensic DNA evidence obtained from Petitioner's sneaker, (ii) present a trajectory trace which may have shown that Sadauskas was near Sternin when both men were shot, (iii) cross-examine Foeller about his statement that, "I got my friends killed," (iv) present evidence of the "murder of [Petitioner's] father by the Chicago Police force" in the 1970s, (v) present evidence that Petitioner's stepfather stabbed Petitioner's mother to death in the 1980s, (vi) present evidence of Petitioner's mental-health problems, such as depression and post-traumatic stress disorder, and (vii) present evidence that Sadauskas and Foeller tried to remove evidence from the scene of the shooting.  *Id*.

On January 4, 2021, Petitioner's motion to vacate was denied.  SR. 234-40.  The court held that the prosecution did not knowingly present false or misleading testimony, and that the testimony was not false.  SR. 235-36.  In addition, defense counsel was not ineffective on any of the grounds Petitioner contended.  The court denied each of the arguments raised by Petitioner.  SR. 234-40.  On May 20, 2021, the Appellate Division denied leave to appeal.  SR. at 259.

7

**LEGAL STANDARD**

28 U.S.C. § 2254 allows a petitioner to challenge his imprisonment from a state criminal judgment on the ground that it is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where the petitioner raises a claim that was adjudicated in state-court proceedings, he is only entitled to relief if that adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(1), (2).

"A principle is 'clearly established Federal law' for § 2254(d)(1) purposes only when it is embodied in a Supreme Court holding, framed at the appropriate level of generality." *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017) (internal quotation marks, brackets, and citations omitted). "A state court decision is 'contrary to' such clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law or has decided a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Id.* (internal quotation marks omitted). "An unreasonable application occurs when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case, so that the state court's ruling on the claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (internal quotation marks and ellipses omitted). In analyzing a habeas claim, "[f]ederal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with clear and convincing evidence." *Hughes v. Sheahan*, 312 F. Supp. 3d 306, 318 (N.D.N.Y. 2018) (internal

quotation marks omitted). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Id.*

Where, as here, the petitioner is proceeding *pro se*, the district court must read the pleadings liberally and construe them "to raise the strongest arguments they suggest." *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

## DISCUSSION

Petitioner contests his conviction on seven grounds, claiming: (1) insufficient evidence to disprove his state law justification defense; (2) the trial court deprived him of due process by precluding him from recalling a prosecution witness as his own; (3) the prosecutor committed misconduct during cross-examination of Petitioner during trial; (4) the prosecutor knowingly permitted one of the victims to testify falsely; (5)-(6) the prosecutor committed other misconduct during cross-examination and summation at trial; and (7) defense counsel was ineffective. ECF No. 1 at 5-15. The Court addresses each claim in turn.

### I.    Sufficiency

Petitioner brings a "legal sufficiency" claim as his first ground for relief, arguing that "the People failed to prove that [he] intended to cause death and failed to [disprove] justification beyond a reasonable doubt." ECF No. 1 at 5. For the reasons below, this claim is procedurally defaulted and thus barred from federal habeas review.

On direct appeal, Petitioner raised a weight of the evidence claim, and the Appellate Division rejected it. SR. 167-70. This argument was grounded in New York's Criminal Procedure Law, and therefore is not cognizable on habeas review. CPL § 470.15(5); *see Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *McKinnon v. Sup't Great Meadow Corr. Fac.*, 422 F. App'x 69, 75 (2d

Cir. 2011) (summary order) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus"); *Clairmont v. Smith*, No. 9:12-CV-1022 (GTS/TWD), 2015 WL 5512832 at *18 (N.D.N.Y. Sept. 16, 2015) (holding that petitioner's argument that the verdict was against the weight of the evidence "states a claim only under state law, [and] is not cognizable on habeas corpus"); *Lopez v. Sup't Five Points Corr. Fac.*, No. 1:14-CV-4615, 2015 W L 1300030 at *12 (S.D.N.Y. Mar. 23, 2015) (noting the petitioner's weight of the evidence claim "presents no federal question reviewable by a federal habeas court").

Petitioner claims he raised a "legal sufficiency" claim on direct appeal, but such a claim is distinct from a weight of the evidence claim, though the claims are related. *See Shuler v. Artus*, No. 9:15-CV-0399 (DNH), 2016 WL 698106, at *3 (N.D.N.Y. Feb. 19, 2016).  As explained below, Petitioner's weight of the evidence claim may not be construed as a sufficiency claim.

A petitioner seeking habeas relief generally must raise all claims in state court prior to raising them in a habeas corpus petition, and must "fairly present" each federal claim in the appropriate state court, "thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1981)); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).

While a petitioner need not "cite 'book and verse' of the Constitution," [] to properly raise and exhaust a federal claim in state court, exhaustion nevertheless requires a petitioner to "'fairly present' [a] constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court

capable of reviewing it.'" *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (quoting *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2015)) (internal citation omitted).

District courts typically "concentrate[] on the degree of similarity between the claims that a petitioner presented to the state and federal courts." *Smith v. Duncan*, 411 F.3d, 340 349 (2d Cir. 2005) (quoting *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005)); *Duncan*, 513 U.S. at 366 (Because the state and federal inquiries were "no more than somewhat similar" rather than "virtually identical," the petitioner did not fairly present his due process claim when he argued to the state appellate court that the trial court's failure to sustain an objection was a "miscarriage of justice").

Sufficiency and weight of the evidence claims are related, but "each requires a discrete analysis." *People v. Bleakley*, 69 N.Y.2d 490, 495 (1987). Evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam).

As stated, Petitioner's weight of the evidence argument was grounded in New York's Criminal Procedure Law. *See* N.Y. Crim. Proc. Law § 470.15(5). Even if all the elements of an offense are supported by some credible evidence, the state appellate court must examine the credible evidence further and determine whether a different finding would have been reasonable. *Bleakley*, 69 N.Y.2d at 495. If a different finding would not have been unreasonable, "then the appellate court must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony." *Id*. (internal quotation marks and citation omitted). The appellate court may set aside

the verdict if it "appears that the trier of fact … failed to give the evidence the weight it should be accorded." *Id*. (citing CPL § 470.20(2)).

The Second Circuit has held that New York's "weight-of-the-evidence claim requires more exacting review than an insufficiency claim, because it entails a weighing of the evidence and an assessment of the credibility of the State's witnesses." *Parker v. Ercole*, 666 F.3d 830, 833 (2d Cir. 2012) (citing *Bleakley*, 69 N.Y.2d at 495). In fact, "[t]he difference in standards is more than semantic; it can be outcome-dispositive." *Lopez*, 2015 WL 1300030 at *12 (cases holding the evidence was legally sufficient but reversed as against the weight of the evidence).

Thus, a "weight claim cannot stand in for a constitutional sufficiency claim when considering whether a habeas petitioner has exhausted state court remedies because the two claims are no more than somewhat similar." *Lopez*, 2015 WL 1300030 at *16; *see also Williams v. Marshall*, 2011 WL 2175810 at *8-9 (S.D.N.Y. Mar. 30, 2011) (raising a state law weight of the evidence claim did not "fairly present" the constitutional sufficiency claim in state court.); *Thomas v. Fischer*, No. 1:05-CV-3010, 2007 WL 1988273 at *3 (S.D.N.Y. Jul. 6, 2007) (petitioner "did not 'fairly present' a federal insufficiency claim when he relied on an 'against-the-weight-of-the-evidence' claim," because the standards are not "so similar" that by presenting one, the petitioner could be said to have "fairly presented" the other) (citations omitted); *Shuler*, WL 698106, at *4.

Here, Petitioner did not raise a sufficiency claim on direct appeal. SR. at 167-70; *see* SR. at 20-26 (Appellant's Brief detailing "weight of the evidence" claim). The Appellate Division construed Petitioner's appeal as one raising a weight of the evidence claim under New York law, expressly "reject[ing] defendant's contention that the verdict is against the weight of the evidence[.]" SR. at 167. Therefore, in light of Petitioner's argument on direct appeal and the Appellate Division's denial of Petitioner's appeal, this Court concludes that Petitioner did not

"fairly present" a legal insufficiency claim to the Appellate Division. *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014). Therefore, to the extent the habeas petition raises a sufficiency claim, such a claim is unexhausted. 28 U.S.C. § 2254(b)(1)(A), (B)(I), (ii); *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011).

Petitioner has "no remaining avenue" by which to exhaust this claim. *Shuler*, WL 698106, at *5. Petitioner may not now file a direct appeal or leave application to exhaust the claim because he is entitled to only one direct appeal to the Appellate Division, which he has already filed. *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001). "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." *Id*. at 91 (citing CPL § 440.10 (2)(c)); *see Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008).

In addition, a procedurally defaulted claim is not subject to habeas review unless (i) a petitioner can show cause for the default and actual resulting prejudice, or (ii) that the denial of relief would result in a fundamental miscarriage of justice (often, that a petitioner is actually innocent). *House v. Bell*, 547 U.S. 518, 536-39 (2006); *see Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) ("Actual innocence means factual innocence, not mere legal insufficiency." (citation omitted)). Petitioner has not identified that either exception applies to his case. Petitioner has failed to establish "cause" because he has failed to show that "some objective external factor impeded his ability to comply with the relevant procedural rule." *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). Petitioner fails to identify any such factor in his petition. *See generally* ECF No. 1. In addition, Petitioner fails to demonstrate actual innocence. Specifically, Petitioner has not presented any "new evidence" that he is actually innocent of the crimes for which he was convicted, or that the Court's failure to review his claim would result in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Accordingly, to the extent Petitioner raises a sufficiency claim, such a claim is unexhausted and procedurally defaulted.  This aspect of Petitioner's petition is dismissed.

## II.     Due Process: Denial of Request to Recall Witness

Petitioner next argues that he was denied his "fundamental right to present evidence [,]" and denied "due process and fair trial" because the trial court denied defense counsel's request to recall Foeller as a prosecution witness.  ECF No. 1 at 7.  For the reasons below, this claim is dismissed because the Appellate Division's rejection of the claim did not amount to an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States.  *See* 28 U.S.C. § 2254(d)(1).

On direct appeal, Petitioner raised this same claim, arguing that he was "denied his fundamental right to present evidence" and that he was "denied due process of law and was denied his right to a fair trial" because the trial court prevented defense counsel from recalling Foeller after cross-examination.  SR. at 29.  The Appellate Division denied his claim, holding that the trial court did not abuse its discretion in doing so because Petitioner "previously had been afforded a full and fair opportunity to cross-examine the witness concerning [that witness's] statements [to the police at the crime scene] but failed to avail himself of that opportunity."  SR. at 168-69 (citing *People v. Comerford*, 70 A.D. 3d 1305, 1306 (4th Dep't 2010)).

As stated, at trial, defense counsel moved for leave to recall Foeller as a witness after cross-examination was complete because he wished to ask him about a statement he had made to police at the scene of the shooting to the effect that "I got my friends killed."  T. at 1351-52.  The trial court denied the request, stating, "The witness was on the stand, you had an opportunity, ample opportunity to ask those questions.  I don't know why you didn't."  *Id*.  Defense counsel claimed

that he had not questioned Foeller about the statement during cross-examination because he believed he could recall Foeller later.  T. at 1353-54.

Petitioner's claim involves "purely state issue[s] of a trial judge's power to conduct the trial and does not implicate [Petitioner's] due process rights."  *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994); *Pawlowski v. Kelly*, 932 F. Supp. 475, 488 (W.D.N.Y. 1995).  While the right to due process undoubtedly encompasses the right to present a defense, examine the government's witnesses, and to offer testimony from defense witnesses, the Appellate Division did not unreasonably determine that Petitioner's due process rights were not violated by the trial court's decision to preclude Foeller's recall in this instance.  *Powell v. Alabama*, 287 U.S. 45, 68 (1932); *In re Oliver*, 333 U.S. 257, 273 (1948); *Ferguson v. Georgia*, 365 U.S. 570, 596 (1961); *Washington v. Texas*, 388 U.S. 14, 19 (1967).

It is well settled that the recall of a prosecution's witness to the stand lies within the sound discretion of the trial court.  *See Feldsberg v. Nitschke*, 49 N.Y.2d 636 (1980) (trial court has discretion to allow introduction of evidence after close of offerer's case or prohibit same); *Pawlowski*, 932 F. Supp. at 488.  Here, Petitioner was afforded an opportunity to present the testimony at issue during cross-examination, T. at 1351-52, and the Appellate Division's reliance upon this fact in rejecting Petitioner's due process claim does not amount to an unreasonable application of the clearly established federal right to present a defense and examine government witnesses, as a matter of due process.  Accordingly, this aspect of Petitioner's petition is denied.

### III.   Prosecutorial Misconduct

Petitioner appears to raise four claims of prosecutorial misconduct.

First, Petitioner argues that his cross-examination was improper because the prosecutor asked improper questions about Petitioner's (i) wife, (ii) religion, (iii) conversations with his attorney, and (iv) "propensity for fighting" via his boxing training.  ECF No. 1 at 8.

Second, Petitioner argues that the prosecutor knowingly allowed a witness to testify falsely. *Id*. at 10.  Specifically, Petitioner claims that Foeller lied when he testified that he was shot twenty feet away from Petitioner, because evidence on Petitioner's sneaker showed that Foeller was within three feet of Petitioner.  *Id*.  Petitioner states he did not find this evidence until after trial because it was "buried" in discovery materials.  *Id*.

Third, Petitioner argues that the prosecutor improperly asked questions that elicited the impression that Petitioner had to prove his innocence, and that, during summation, the prosecutor commented on Petitioner's failure to prove his injuries and call witnesses.  *Id*. at 12.

Fourth, Petitioner argues that the prosecutor made improper comments in summation with respect to the availability of a justification.  *Id*. at 13.  Specifically, the prosecutor stated that Petitioner's claims of self-defense should not be credited because Petitioner was armed and the victims were not, and that such comments improperly gave the jury the impression that Petitioner's possession of a weapon was dispositive of a self-defense claim.  *Id*.

For the reasons below, none of Petitioner's claims warrant relief.

### a.  Questions on Cross-Examination

As stated, Petitioner argues that the prosecutor's questions about Petitioner's (i) wife, (ii) religion, (iii) conversations with his attorney, and (iv) boxing training were improper.  ECF No. 1 at 8.  As the Appellate Division concluded, one aspect of this claim is procedurally defaulted because it was not raised at trial, while others were permissibly disposed of by the Appellate

Division in a manner which did not amount to an unreasonable application of clearly established Federal law.  28 U.S.C. § 2254(d)(1); *see* SR. at 169.

On direct appeal, Petitioner argued that the cross-examination was improper because the prosecutor asked about his marital status and suggested that he had engaged in adultery because, on the night in question, Petitioner was accompanied by a different woman, Elbing.  SR. at 34-35.  The Appellate Division, in rejecting this argument, stated that "most of the instances of alleged [prosecutorial] impropriety [were] not preserved for [its] review[,]" citing CPL § 470.05(2), and then stated that "the prosecutor's cross-examination of defendant was not improper[.]" SR. at 169.

After a searching review of the trial record in this case, the Court can discern no instance of a defense counsel objection to the prosecutor's questions regarding his marital status or alleged adultery.  As a general matter, federal courts "will not review questions of federal law presented in a habeas petition where the state court's decision on the claim" rests upon a "state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  Such a ruling must be supported by a "firmly established" and "regularly followed" state rule for review of a federal constitutional claim to be barred.  *Downs v. Lape*, 657 F.3d 97, 102 (2d Cir. 2011).  It is well settled that New York's contemporaneous objection rule is such a rule.  *Id*. at 104 (collecting cases).

Here, the Appellate Division appears to have determined, if not expressly, that Petitioner failed to properly preserve a prosecutorial misconduct claim related to the prosecutor's questions about his marital status and alleged adultery, in accordance with New York's contemporaneous objection rule.  *See* SR. at 169.  Because the Appellate Division appears to have relied upon New York's contemporaneous objection rule, an independent and adequate state law ground for its

decision to dispose of this claim, this claim is barred from federal habeas review.  *See Garcia v. Lewis*, 188 F.3d 71, 82 (2d Cir. 1999).  This aspect of the petition is accordingly denied.[2]

Petitioner also argues that the prosecutor asked improper questions about his religion, "his belief in God and the Bible[,]" over defense counsel's objections.  ECF No. 1 at 8-9.  Petitioner raised this claim on direct appeal, arguing that the prosecutor's questions regarding a religiously significant necklace Petitioner had worn on the night at issue amounted to an improper attempt to discredit Petitioner because of his religious beliefs.  SR. at 35-36 (describing Santeria necklace).  The Appellate Division rejected this argument in the manner it did with respect to Petitioner's first claim of prosecutorial misconduct, stating that "most of the instances of alleged [prosecutorial] impropriety [were] not preserved for [its] review[,]" and that "the prosecutor's cross-examination of defendant was not improper[.]"  SR. at 169.  This specific instance of alleged prosecutorial misconduct appears to have been properly preserved, *see* T. at 1601-06, but, nevertheless, it is without merit because the Appellate Division's rejection of it did not amount to an unreasonable application of the clearly established federal right.  *See* 28 U.S.C. § 2254(d)(1).

At trial, Petitioner testified that his use of force was justified, in part, because a religious necklace he had been wearing that night was damaged during the fight, which he believed was an "omen" that danger was coming.  T. at 1601.  On recross-examination, the prosecutor asked Petitioner if he believed in God, and attempted to discuss Petitioner's beliefs regarding the necklace.  T. at 1603-06.

Prosecutorial misconduct may provide a basis for habeas relief if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Beverly v. Warden*, No. 3:07-CV-1333(RNC), 2009 WL

---

[2] Petitioner does not show (i) cause for the default and actual resulting prejudice, or (ii) that the denial of relief would result in a fundamental miscarriage of justice.  *House*, 547 U.S. at 536-39.

322870, at *1 (D. Conn. Feb. 10, 2009).   Contrary to Petitioner's contentions, the Appellate Division did not unreasonably determine that no misconduct occurred in its denial of this claim. While the Appellate Division's analysis of this claim was undeniably brief, this Court finds that the conclusion was not an unreasonable application of the exacting standard for prosecutorial misconduct articulated by the Supreme Court.   Indeed, the Appellate Division may have determined that the prosecutor's questions were a permissible attempt to attack the credibility of Petitioner's claim of self-defense, and his own statement that the alleged omen contributed to his reasonable belief of future danger, rather than an improper attempt to diminish Petitioner's credibility on the basis of religion.   Petitioner does not demonstrate in his petition that the questions "so infected the trial with unfairness" as to constitute a due process violation.   *Darden*, 477 U.S. at 181.

Thus, Petitioner has failed to show that the Appellate Division's rejection of this claim of prosecutorial misconduct amounted to an unreasonable application of federal law.   Accordingly, this aspect of the petition is dismissed.

Petitioner additionally argues that the prosecutor asked improper questions about conversations Petitioner had with defense counsel at trial.   ECF No. 1 at 8.   Petitioner raised this claim on direct appeal, SR. at 36-37, and argued that a curative instruction the trial court had issued in response to defense counsel's objection was insufficient to cure the alleged misconduct.   *Id.* The Appellate Division rejected this claim, finding no misconduct and relying on the fact that "in the instances where defendant [objected], the [trial] court issued curative instructions[.]" SR. at 168-69.

After a recess at trial, the prosecutor asked Petitioner on cross-examination whether he had spoken with defense counsel during the recess, asking "Did he in any way give you any…", T. at

1569, prompting an objection, which was sustained. The trial court struck the prosecutor's attempt to ask that question, and issued a curative instruction during jury instructions which indicated that Petitioner and his counsel may discuss any matter they wished. T. at 1569, 1755.

The Appellate Division's rejection of this claim did not amount to an unreasonable application of federal law. As stated, to prevail on this claim, Petitioner must show that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181; *see also Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998) ("In order to grant relief, we would have to find that the prosecutor's comments constituted more than mere trial error, and were instead so egregious as to violate the defendant's due process rights."). In determining whether the prosecutor's conduct deprived the petitioner of a fair trial, courts consider "the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct." *United States v. Elias*, 285 F.3d 183, 190 (2d Cir. 2002).

After thorough consideration, the Court concludes that this alleged instance of prosecutorial misconduct was insufficient to render Petitioner's conviction a violation of his due process rights, as the Appellate Division reasonably determined, and that the trial court promptly and effectively cured whatever alleged misconduct the prosecutor engaged in, "fully protecting [Petitioner's] right to a fair trial." *Moore v. Conway*, 476 F. App'x 928, 930 (2d Cir. 2012) (summary order). Here, the trial court sustained defense counsel's objection and, at defense counsel's request, issued a curative instruction during jury instructions. T. at 1569, 1755. The Appellate Division, in relying upon this instruction in its denial of Petitioner's claim, did not unreasonably apply federal law. SR. 168-69. Accordingly, this aspect of the petition is denied.

Petitioner also contends that prosecutorial misconduct occurred when the prosecutor asked him, over defense counsel's objection, whether he had boxing experience because, in Petitioner's view, this may have shown a "propensity for fighting."  ECF No. 1 at 8; *see also* SR. at 37-38 (Appellant's Brief).  The Appellate Division's rejection of this claim was likewise not unreasonable.  Petitioner does not demonstrate that these questions infected the trial with unfairness, nor that the Appellate Division unreasonably rejected his claim on appeal.  *See* ECF No. 1 at 8 (assertion that misconduct occurred).  Indeed, such questions were likely relevant to Petitioner's self-defense claim at trial.  Accordingly, this aspect of the petition is denied.

### b.  Victim Testimony

Petitioner argues that the prosecutor knowingly presented false testimony from Foeller with respect to the distance between Petitioner and Foeller at the time he was shot.  ECF No. 1 at 10. Specifically, Petitioner claims that Foeller testified that he was shot twenty feet away from Petitioner, and that such testimony was false because blood spatter evidence showed that Foeller was three feet away when Petitioner shot him.  *Id*.  Petitioner raised this argument in his CPL § 440.10 motion, but identified Sadauskas as the relevant witness, not Foeller.  In accordance with this Court's obligation to construe *pro se* pleadings liberally "to raise the strongest arguments they suggest," the Court will construe the petition to be challenging Sadauskas's testimony, not Foeller's, as Petitioner argued in his motion to vacate.  *Triestman*, 470 F.3d at 474.  For the reasons below, the CPL § 440 court's rejection of this argument did not amount to an unreasonable application of federal law.

In denying Petitioner's § 440.10 motion, the § 440 court observed that the trial record contained many inconsistencies in witness testimony, and any discrepancy between Sadauskas's testimony and the testimony of others did not necessarily render his testimony false.  SR. at 235-

36.   Specifically, Sadauskas appears to have testified that he was shot twenty feet away from Foeller's vehicle, not near Foeller's vehicle.  *Id*.  Petitioner argued that blood spatter evidence that was found on Petitioner's sneaker showed that Sadauskas was shot near Foeller's vehicle, where Sternin was found and blood was present.  *Id*.  This inconsistency, according to Petitioner, amounted to perjury, which the prosecutor knowingly presented.  *Id*.  The court rejected this argument, reasoning that the trial record contained, as stated, many inconsistences in witness testimony, which were for the jury to resolve, and this alleged inconsistency may have been resolved by concluding that Sadauskas was shot near Foeller's vehicle, and walked twenty feet away.  *Id*.  In addition, the court observed that the estimate that Sadauskas was shot twenty feet away from Foeller's vehicle originated from a North Tonawanda Police Officer at trial, not Sadauskas.  SR. at 235.

It is well settled that the prosecution's use of perjured testimony can violate due process, but only where "'the prosecution knew, or should have known, of the perjury,' and 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Drake v. Portuondo*, 321 F.3d 338, 345 (2d Cir. 2003) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted in original)).  That the "witness actually committed perjury," *United States v. Zichettello*, 208 F.3d 72, 102 (2d Cir. 2000), is a necessary predicate for a due process claim, *see id*. (holding that "appellants' claim fail[ed] because they have not established that [the witness] committed perjury").  Federal courts have repeatedly held that "even a direct conflict in testimony does not in itself constitute perjury."  *United States v. Gambino*, 59 F.3d 353, 365 (2d Cir. 1995).   A petitioner must identify more than "[s]imple inaccuracies or inconsistencies" in a witness's recollection or inconsistences between various witnesses testimony, which clearly "do not rise to the level of perjury."  *United States v. Monteleone*, 257 F.3d 210, 219

(2d Cir. 2001); *Williams v. McCarthy*, No. 1:19-CV-01007 EAW, 2023 WL 8944013, at *21 (W.D.N.Y. Dec. 28, 2023)

Here, the CPL § 440 court did not unreasonably apply federal law in concluding that the relevant testimony was not perjury.  SR. at 235-36.  Petitioner, in the present petition and in his motion to vacate, does not identify more than mere "inaccuracies or inconsistencies" in Sadauskas's testimony.  *Monteleone*, 247 F.3d at 219.  Though Petitioner appears to contend that the prosecutor's use of such testimony violated his due process rights, his allegations are more properly understood as a weight of the evidence claim, challenging the jury's resolution of alleged conflicts in witness testimony.  That is, Petitioner's allegations of perjured testimony, without more, invite the Court to "revisit the factfinder's determinations as to the witnesses' credibility and veracity [,]" which the Court is not permitted to do on habeas review.  *Moye v. Corcoran*, 668 F. Supp. 2d 523, 539 (W.D.N.Y. 2009).  Accordingly, this aspect of the petition is dismissed.

### c.  Burden of Proof

Petitioner argues that the prosecutor impermissibly suggested that it was Petitioner's burden to prove his innocence during cross-examination and summation.  During cross-examination, the prosecutor asked Petitioner why he did not take pictures of the injuries he sustained during the fight, seek medical attention, or tell others that he had acted in self-defense during his time in Pennsylvania after the shooting.  ECF No. 1 at 12.  During summation, the prosecutor "commented on [Petitioner's] failure to prove his injuries [that he sustained during the fight] and call [certain] witnesses." *Id*.  The Appellate Division again did not unreasonably reject this claim.

On direct appeal, the Appellate Division held that "the prosecutor's cross-examination of [Petitioner] was not improper and the prosecutor's summation was a 'fair response to defense

counsel's summation or fair comment on the evidence[.]'" SR. at 169 (quoting *People v. McEathron*, 86 A.D. 3d 915, 916 (4th Dep't 2009)).   "Proceed[ing] directly to consider the substance of the petition[,]" this Court concludes that the Appellate Division did not unreasonably apply federal law in concluding that each of these instances of alleged misconduct did not amount to a violation of Petitioner's due process rights.  *Legree v. Thompson*, No. 6:20-CV-06059-CJS, 2023 WL 8005739, at *6 (W.D.N.Y. Nov. 17, 2023).   Petitioner presents no allegations in his petition that any of these questions or comments on cross-examination or summation impermissibly shifted the burden of proof to Petitioner, such that they "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Darden*, 477 U.S. at 181. Accordingly, this aspect of the petitioner is dismissed.

### d.   Justification

Petitioner argues that the prosecutor improperly argued during summation "that [a self-defense] justification is not available as a defense to someone who shoots an unarmed man" and the trial court incorrectly allowed this comment "because it was 'argument.'"  ECF No. 1 at 13-14.  The Appellate Division appears to have resolved this argument in the manner it did above, concluding that "the prosecutor's summation was a 'fair response to defense counsel's summation or fair comment on the evidence[.]'" SR. at 169 (quoting *People v. McEathron*, 86 A.D. 3d 915, 916 (4th Dep't 2009)).  The relevant testimony is summarized below.

During defense counsel's summation, defense counsel commented on Petitioner's alleged reasonable fear of Sadauskas and Sternin, which allegedly justified his use of deadly force:

> And while he was fighting and lying on the ground with men on top of him, and having his head banged against the ground and having himself kicked, and having his [necklace] being ripped off by being dragged across the ground, and having his shoe being ripped off, he heard somebody say "knife" and he looked up and believed [he saw] what he thought was a knife . . . .  Who's got the knife?  Who

knows . . . . But he does know that those people are coming at him. And he knows that even after he pointed the gun, Mr. Sternin kept coming at him.

T. at 1678-79.

In response, the prosecutor made the following statements in summation:

The judge is also going to talk to you about in her instructions, and listen to her instructions, the amount of force you can use against another person under justification . . . . [W]hat amount of force was Mark Sternin using against [Petitioner] when he shot him? Was Mark Sternin using deadly physical force? . . . [W]hat amount of force was Tyler Sadauskas using . . . . Even under [Petitioner]'s version of the facts, neither of them had deadly physical force . . . . You cannot, ladies and gentlemen, shoot two unarmed individuals, you cannot do that and have it rise to the level of self-defense.

T. at 1704-05.

The Appellate Division did not unreasonably apply federal law in rejecting Petitioner's argument that the prosecutor's comments were improper.  Allegedly "[i]mproper statements during summation must cause 'substantial prejudice' to the defendant before a conviction can be overturned." *Jones v. Keane*, 250 F. Supp. 2d 217, 237 (W.D.N.Y. 2002) (quoting *United States v. Eltayib*, 88 F.3d 157, 172-73 (2d Cir. 1996)).  Statements made by prosecutors in their summation, even if seemingly improper, do not necessarily exceed "the broad range of rhetorical comments allowed in closing arguments." *Harper v. Kelly*, 704 F. Supp. 375, 379 (S.D.N.Y. 1989); *see Donnelly v. DeChristoforo*, 416 U.S. 637, 646-47 (1974) (isolated passages of a prosecutor's argument, even if imperfect, do not suggest that a jury will be so profoundly affected so as to affect the fundamental fairness of a trial).

Here, even if the prosecutor's comments as to Petitioner's justification defense were improper, Petitioner fails to show that they were so inflammatory as to affect the fundamental fairness of the trial.  Rather, the record suggests that the prosecutor's summation was a rhetorical response to defense counsel's claim that Petitioner's use of deadly force was justified.  Petitioner

posited that Sternin and Sadauskas posed an imminent threat to his safety, and the prosecutor responded in summation by inviting the jury to consider whether Petitioner's use of deadly force was justified, especially when Petitioner's alleged assailants were unarmed.  In addition, whatever prejudice Petitioner suffered from such remarks was cured by the trial court's instruction to the effect that the jury must consider only whether Petitioner reasonably believed Sternin and Sadauskas were using or about to use deadly force.  *See United States v. Elias*, 285 F.3d 183, 190 (2d Cir. 2002) (when determining whether the prosecutor's conduct deprived the petitioner of a fair trial, courts consider "the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct"); *see also* T. at 1759-61.

Accordingly, Petitioner fails to show that the prosecutor's comments as to the availability of a justification defense violated his due process rights.  The Appellate Division reasonably applied federal law in rejecting this argument.  Thus, this aspect of the petition is dismissed.

### IV.    Ineffective Assistance of Counsel

Petitioner argues that defense counsel was ineffective because defense counsel failed to (i) provide DNA evidence of blood spatter on Petitioner's sneaker, (ii) provide to the jury evidence that his father was killed by police in the 1970s, and (iii) present evidence that Petitioner's mother was stabbed to death at a nightclub in the 1980s.  ECF No. 1 at 15.  Petitioner exhausted these claims by raising them in his CPL § 440 motion.  SR. at 176.  Each of them was denied by the CPL § 440 court, SR. at 234-236, and none of the claims warrant relief here because Petitioner does not show that the CPL § 440 court unreasonably applied federal law in rejecting them.[3]

To establish ineffective assistance of counsel, a petitioner must show that (1) counsel supplied deficient representation that "fell below an objective standard of reasonableness . . . under

---

[3] The Appellate Division denied leave to appeal the CPL § 440 court's denial of Petitioner's motion.  SR. at 259.

prevailing professional norms"; and (2) that petitioner suffered prejudice as a result.  *Strickland v. Washington*, 466 U.S. at 687-88 (1984).  "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney."  *Harrington v. Richter*, 562 U.S. 86, 110 (2011).  The standard is deferential to the attorney, who observed the proceedings, knew of material outside the record, and interacted with the parties. When such deference is combined with the § 2254(d) deference accorded to state court findings, habeas review is "doubly" deferential.  *Richter*, 562 U.S. at 105.

Here, Petitioner shows neither that defense counsel's performance fell below an objective standard of reasonableness, nor that he suffered prejudice from defense counsel's decisions, nor that the CPL § 440 court unreasonably applied Supreme Court law in its rejection of Petitioner's claims.  *See* ECF No. 1 at 15.  After reviewing the trial record and the relevant CPL § 440 proceedings, the Court concludes that the state court did not unreasonably determine that Petitioner's claims fail to satisfy the two-part *Strickland* test.  *See* SR. at 234.  Setting aside Petitioner's failure to articulate why defense counsel's performance was not reasonably competent, Petitioner does not demonstrate that the outcome of his case would have been different had defense counsel taken any of the relevant actions.  *See King v. Greiner*, 453 F. App'x 88, 90 (2d Cir. 2011) (summary order) ("Without addressing whether counsel was deficient in failing to object to the prosecutor's second summation, we conclude that King cannot prevail on his ineffective assistance of counsel claim because he has not demonstrated a substantial likelihood that, but for counsel's allegedly deficient performance, the result of the proceeding would have been different."); *Barill v. Artus*, 511 F. Supp. 3d 394, 415 (W.D.N.Y. 2020).  Accordingly, the Court concludes that the CPL § 440 reasonably determined that Petitioner did not suffer prejudice as a consequence of defense counsel's allegedly deficient performance.  Thus, this aspect of the petition is dismissed.

**CONCLUSION**

Petitioner's request for habeas relief is DENIED and his petition is DISMISSED.  Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED.  The Clerk of Court shall enter judgment and close the case.

IT IS SO ORDERED.

Dated: May 1, 2024
        Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Court Judge
Western District of New York